v. Wal-Mart. Council for Wal-Mart v. argue that Mr. Pizzella, did I pronounce that correctly? Yes, sir.  Good morning. May it please the Court, Mark Pizzella from Fish and Richardson on behalf of Wal-Mart. I'd like to begin with the numerous errors on summary judgment. Summary judgment is governed by well-known likelihood of confusion factors. There are other things to consider in the course of deciding a trademark case, but likelihood of confusion is really the focus of my arguments this morning. This Court's analysis of the review of the summary judgment decision is governed by the 2015 case of Jacobs, 780 F. 3rd, 562. In that case, this Court reviewed a grant of summary judgment by the same district court judge, Judge Boyle. And in that case, this Court found that it was reversible error for the district court to weigh evidence, to disregard evidence on behalf of the non-movement, and to take adverse inferences against the non-movement, among other errors. In this case, Judge Boyle committed many of the same errors in the same way. So turning to the likelihood of confusion elements. Do you want a jury trial? A remand and a jury trial on liability would be a fine result. But at the end of... I'm talking about in connection with the summary judgment. You're saying that there's error. If we were to agree with you, would we go back to the jury trial, or what do you want? Summary judgment only related to liability. Correct. What we would like, because there were cross motions for summary judgment, is judgment to enter in favor. One thing thrown out. One thing thrown out. That's exactly right, Your Honor. And the reason why, it's governed by three cases. Is there something peculiar about trademark litigation as it relates to the principles of summary judgment? Is there anything special?  You're a trademark expert. Summary judgment may be granted in... We get a lot of summary judgment appeals. Correct. I hear a lot of summary judgment appeals. You're the trademark expert. I was wondering if there was something peculiar. No, summary judgment may be entered in favor of the plaintiff or the defendant in a trademark case. And this court, in three cases, that should guide this court's analysis, have affirmed summary judgment in favor of defendant, party in Wal-Mart's position. And those cases align almost precisely with the facts in this case. They're George, the left, right, and center case. Kerr first versus first Kerr. And most recently, this past spring, Grayson versus Agadir. Those three cases, this court affirmed summary judgment in favor of the defendant on the same facts. Those facts were a weak mark, the absence of actual confusion, a dissimilarity of the two marks. That's it. And in George, this case, this court said, we're aware of no case that has proceeded beyond summary judgment where those were the facts. So, the court asks, what would we like? We'd like summary judgment in favor of Wal-Mart. But at a minimum, there should be a remand because the court made numerous errors. Likelihood of confusion. Are those errors primarily factual disputes? Or are you saying they're legal errors? There are legal errors. There are factual disputes that raise issues of fact with respect to the granting of summary judgment in favor of plaintiff. What are your best factual dispute contentions? Material factual disputes. That's what you have to have, right? Yes. What are your best ones? The district court below simply didn't consider evidence of third-party use. Evidence of third-party use affects several of the likelihood of confusion errors. So, at a minimum, there is a factual dispute as to the effect of the third-party use on the strength of the mark claimed by Variety. Because if a mark is used widely in the marketplace, it's not entitled to a finding that it's a strong mark. Judge Boyle stated in his opinion. So, the third-party use permeates analysis of some of these nine factors? Correct. And how many of them did you throw out? How many of them did you mention? I just now mentioned strength. It also permeates similarity, okay? If a mark is weak due to the presence of third-party users of a mark throughout the marketplace, the strength of the mark factor should weigh in favor of the defendant. Also, if a mark is weak, it fundamentally affects the similarity analysis. Because as this court said in. . . Is the judge entitled to make. . . When he makes an analysis on strength and similarity, for example, these nine factors, does he balance them out or does he have to look at them for light most favorable to one side or the other? How does that work? The judge has to look at the evidence in the light most favorable to the non-movement, and here that's Wal-Mart. Judge Boyle did not do that. So, Wal-Mart gets the benefit of being the non-moving party here? Correct. But the error is worse than that, particularly on the effect of third-party use. If you look at the court's opinion below, the court merely states, Wal-Mart argued that third-party use affects strength. The court doesn't list the evidence actually submitted. It doesn't engage with the volume of evidence that was submitted and what it meant. And importantly, that's substantial evidence. And this court in Jacobs said that the failure to consider substantial evidence presented by the non-movement is itself error. So let's just look at that evidence just for a moment on third-party use. To begin with, Variety's 30b-6 deponent admitted at his deposition that the word backyard, the word that Variety contends is the dominant word, is, quote, for the sale of grills and grilling accessories. That alone should prevent the similarity and the strength factor as falling in favor of Variety. But there's more than that. Wal-Mart submitted declarations that included exhibits. For example, the Thompson & Thompson trademark search that looked at marks that are on the registry, at least as of the time that the papers were submitted, there were 500 registrations on the registry with the word backyard in them. A hundred and twenty were in the same category of services that Variety claimed in its registration. There were 23 registrations that included barbecue or grills in the description of goods. In addition to the information on the registry that was submitted, Wal-Mart submitted a declaration from a private investigator who looked at the marketplace, went to stores, visited websites, and he found a dozen other common law unregistered uses of marks including backyard for grills and grilling accessories. Judge Boyle makes no mention of that record evidence in his decision. That's error, and it fundamentally affects the strength analysis and the similarity analysis. That's enough on strength for the moment. On similarity, there are significant errors insofar as the court began and ended its analysis with the question of whether backyard, the word backyard, appeared in both parties' marks. That's a very small fraction of the analysis that the court was obligated to perform on summary judgment. It's not just a question of whether there's the same word in the mark. This court in George, in Carefirst, and in Grayson has repeatedly held that the test is not whether a single word overlaps. The test is looking at the totality of the presentation of the mark as it is shown to the consumer at retail. What does the consumer see? And that makes sense because what we're trying to determine here is whether consumers are likely to confuse the two. So what does that mean? That means you have to conduct an inquiry of what does the mark look like. Even with respect to the word backyard, is it smaller in one mark versus the other? Is one more prominent than the other? Are there other words that accompany the mark here? Walmart accompanied its mark with the word grill. And if you look at the imagery provided in the briefs, backyard's very small and grill is very large in all iterations. And importantly, the word grill is not merely the word grill. The I has been replaced by an image of a grill. So it's not just the generic word grill that has been added to the total mark, but it's a distinctive design that has been attached to the mark. Variety's part, when they use imagery, they use an umbrella and gardening implements, not a grill. Where does that legal advice point come in here? Intent. Walmart offered no, we didn't assert a defense of advice of counsel. We didn't disclose any legal advice. That's factor number six? Yes. Intent. Yes. Which the court concluded favored variety. Correct. And there the court erred by taking an adverse inference against the non-movement Walmart. So I recommend reviewing the deposition testimony of Ms. Karen Deneen, Walmart's witness. It's about four pages long. It's cited and excerpted in Walmart's reply brief, I think at page nine or 13. That's the sum total of the testimony that Judge Boyle relied on. Nowhere in that testimony does Ms. Deneen state any legal advice. She merely says that the company didn't move forward with backyard BBQ or barbecue. Are you saying that the court inferred what the legal advice was? Yes, precisely. But he didn't know what the legal advice was. Exactly. That was not in evidence. Correct. That Walmart never gave up a three-and-a-half privilege. Correct. So we don't know what the legal advice was. Correct. It was his record. Correct. So what kind of an inference could he draw? He couldn't, but he did. He couldn't draw any inference. Correct. The inference he drew. Well, could he draw an inference that there was no legal advice given that was contrary to what was done? Could you state that another way? Could he draw an inference that favored Walmart? Certainly. And on summary judgment, he was. . . That he could have inferred what the legal advice was. No, but given all of the other evidence. . . If he looked at it and thought it was favorable to you, could he have inferred what the legal advice was? You're saying he couldn't infer what the legal advice was. There was no legal advice in the record. I understand. So all of the. . . But there was discussion of discussions with the lawyers. Yes. Okay. And then there was discussion of what was done. Correct. All right. From those two facts, could he have inferred anything about what the legal advice was? With the addition of two other facts beyond those you just posited. Another fact is that Ms. Deneen submitted a declaration on summary judgment that Walmart was. . . Ms. Deneen was what was her asking of Walmart? She was a very senior marketing person. She was involved in the decision to adopt the name. She was the bigwig, what we would call. . . Fair enough. False Walmart. Ms. Deneen submitted a declaration stating that Walmart was unaware of Variety's claimed use of Backyard BBQ. What did she do? She was deposed. Yes. And then she submitted a declaration after that? Yes. And was that objected to or complained about that you tried to supplement her deposition? Not that I'm aware of.  It is in the record. It is in the record. It is undisputed that Walmart was unaware of the fact that Variety claimed to use Backyard BBQ as a trademark on grills and with grill accessories until after the case was filed. That being the case on intent, there's no way that the court can draw an inference adverse to Walmart that Walmart was aware of their use of Backyard BBQ and proceeded in any event. And if the court can't draw that inference, what happens to that conclusion on number six? It falls away. Intent has to fall in favor of Walmart because there's no evidence in the record. Is that enough standing alone to get the summary judgment upended? Yes. The intent factor alone is enough to remand. But when you combine it with the fact that there was no actual confusion in the face of millions of sales over the course of years, and you combine it with the fact that Walmart submitted two expert surveys, one of which the court accepted but weighed, which is impermissible on summary judgment, the other of which the court made no mention of, the court ignored it altogether. So that's ignoring material evidence under Jacobs. That's also error on summary judgment. So you combine the absence of... That's unrelated to the legal advice. Unrelated. That's the actual confusion point in the likelihood of confusion analysis. So essentially, if the court looks at intent, which should fall in Walmart's favor given the record, and if you eliminate the adverse inference taken against the non-movement, which the court should, if the court looks at third-party use and its effect on strength and the fact that the court ignored it, if the court looks at similarity and the failure to consider the strength of the weakness of the mark in connection with how close or far one must come when a mark is strong or weak, and you combine that with the absence, the affirmative proof of the absence of actual confusion, both in the real world, where there were no reported incidents of actual confusion, despite millions of products sold, and as tested by two experts, those four elements combined, under this court's precedent in Kerr first, George, and Grayson, counsel in favor of summary judgment for Walmart, and certainly should require at least a reversal in remand. Unless the court has any further questions on likelihood of confusion, I'd like to use the rest of my time to discuss an error on the later disgorgement remedies trial. I thought you were going to argue that you can do it however you want, but you want to argue the summary judgment initially and then get to the post-judgment issues, the damages and disgorgement and all that. That's fine. You can do it however you want. That's fine, Your Honor. I'll do it in the second half. Okay. Just a couple more points on strength. The strength analysis was error, as I said, because the court didn't consider the effect of third-party use. That affects the two components of the strength analysis, both the conceptual strength and the commercial strength. With respect to the commercial strength analysis, commercial strength has a separate multi-part test to determine the real-world impact of plaintiff's claim to use. That decision itself is also rife with error. For example, the court looked at the degree to which Variety advertised its mark. In doing so, because there was very minimal advertising, the court looked at, for example, the inserts for the products in newspapers. The court credited on summary judgment Variety with the spend for the entire inserts. We all know what these things are. They're the inserts that fall out of the Sunday paper. Those inserts have laundry detergent, clothing, all manner of other goods and services advertised in there. The grills were a very small portion of those advertisements. Yet Judge Boyle credited Variety with the expense of all of the inserts. They're a very small portion. There are any number of factual errors, either weighing evidence adverse to Wal-Mart, not giving Wal-Mart the benefit of adverse inferences, not considering evidence that Wal-Mart presented, third-party use survey evidence, that all lead to reversal. And again, when the court looks at this de novo under Grayson Carefirst and George, the proper result is summary judgment in favor of Wal-Mart. Thank you. Thank you, sir. Can you save some time for these other issues? Yes, sir. Mr. Adams? Yes, Your Honor. Good to have you here, sir. Thank you, Your Honor. Good morning. May it please the Court. There were cross motions for summary judgment in this case. Wal-Mart had a choice when Variety filed its motion for summary judgment. It could have opposed the motion for summary judgment on the grounds that there were genuine issues of material fact, and it did not do that. Both parties argued that they were entitled to summary judgment, and Wal-Mart's briefs in the district court are littered with that statement. There are no genuine issues of material fact in this case, and therefore Wal-Mart is entitled to summary judgment. But what happened on appeal? Wal-Mart did not appeal to this court from the judge's denial of its motion for summary judgment, and that issue is not before this court. There's one other fact that's particularly important, and that is that summary judgment appeals from summary judgment are determined on the summary judgment record. And most of the evidence that appears in Wal-Mart's briefing in this case did not come from the summary judgment record. You're saying they should have filed a notice of appeal earlier? No. I'm saying that the lawyers that were representing Wal-Mart at the time made their best case as to why they thought that Variety was not intending. The court can deny both motions for summary judgment and go forward on it. No, they granted ours. I know they granted it, and that's been appealed. They filed a cross appeal. They filed a notice of appeal in the timeline. Yes, and the point is that that's obviously true, but the record, but the evidence that Wal-Mart has to rely on in their cross appeal has to come from the summary judgment record. And if you look in our brief, we went to the trouble to actually compare the record evidence, and it's a whole page of evidence that they cite in their briefs here that are not in the summary judgment record. They're only in the profits disgorgement record. And I think that's the point we tried to make in our briefing, and that is that in essence Wal-Mart converted the profits disgorgement hearing into a redo of the summary judgment with their new counsel. There are a couple of points that I'll add. They didn't file a notice of appeal timeline, right? No. I mean, no, not at all. I mean, shortly after the court granted our motion for summary judgment, we filed a motion for a status hearing and for a setting on profits disgorgement. Your Honor mentioned adverse inference. Both parties were movements. There was no non-movement in the summary judgment case. But here's the inference. But to grant summary judgment, in granting summary judgment to you, the court was obliged to examine the facts in the light most favorable to the other side, which was your response. Do you agree with that? Not in this case, and I'll tell you. I would agree with that. No, and here's why. So is there something special? And I'll let you get that. Is there anything special about the fact it's a trademark? Yes, but not for this reason. Let me explain. There is special. Yes, I want to come back to that. Are there special rules on summary judgment for trademarks? There are no special rules, but I'll address that now. All right. Go ahead. Take a case where the argument is whether or not someone signed a contract. One party says, yes, I signed it. The other party says, no, it's a forgery. That's sort of a binary decision. That goes to a jury, and the jury either decides yes, the agreement is valid, or no, it's not. But this court has told trademark litigants that there are seven to nine factors that have to be considered. And they've also told the trademark litigants that these nine factors, and I think, Judge Floyd, you said that in the SuperDuper case, these factors vary from case to case. In some cases, these nine factors may be more or less important than others. There's no special rule for deciding summary judgment in trademark cases, but the difference is this. The way you determine the relevance of these seven to nine factors depends generally on how close the trademarks and how similar the goods and services are. And the closer they are to each other, the less relevance all of those other factors have. And so you can take an extreme case, where someone comes out with, say, an Apple computer. I mean, no one is going to look at factors three through nine in a case like that. That's per se infringement. And frankly, this case comes pretty close to that. But this segues into the question of inference, because Walmart made an explicit claim of attorney-client privilege. We thought they had waived the privilege, and they bitterly opposed producing any evidence. Now, what's the inference there? It's clear that when someone asserts a privilege, the inference runs in the other direction. The inference is that if truthful testimony were given regarding the substance of the claim privilege, it would be adverse to their legal position. And that's exactly what happened here. Ms. Deneen testified. So you're saying that on the privilege issue, that the judge was entitled to draw inferences adverse to Walmart? The judge did not say he did that. No, I don't understand. But, yes, he was fully – But there's a convention on appeal that as a matter of – they say on appeal that he did do that.  He was entitled to do that. That's what I'm getting at. In fact, he was obligated to. He's obligated to draw an inference in favor of you. Yes, because of the claim of attorney-client privilege. Notwithstanding the summary judgment rule. Well, again – So the privilege somehow makes a special rule for summary judgment. I don't understand. It's not a case of summary judgment. In any case, where someone claims a privilege, whether it's self-incrimination or attorney-client privilege – And an inference that was drawn by the district court according to Walmart's position. An inference that was drawn adverse to Walmart in the warning of that summary judgment. And they say you can't draw inferences with respect to attorney-client advice. And you say you can't. Well, you – It's going to be the first court to decide that, or you've got a case – McKillop versus Onslow. McKillop versus Onslow. This is a North Carolina case, and it's a North Carolina rule. It's a North Carolina court? It's a court of appeals. A court of appeals. That's the intermediate court. Correct. In North Carolina. So that's your case. Well, there are dozens of cases, including federal cases. The one I'm most familiar with is – Do we apply North Carolina rules in the – If it's a rule of application, yes. If it's under federal rule of evidence 501, you would apply the rule that a North Carolina court would apply. Because there's no fixed federal rule that's contrary to it. And what did that North Carolina court say that's applicable here? Essentially just what I said, and that is in a case where a litigant asserts a privilege, that evidence is – the claim of privilege is relevant and can be – that the truthful testimony, if given, would have been adverse to the client's legal position. That's in essence what that case says. That would be like something sort of the Fifth Amendment in a civil deposition. Well, in fact, McKillop is a Fifth Amendment case. That is a Fifth Amendment case? But the case applies broadly to claims of attorney-client privilege. But the fact is that Judge Boyle did not – Who was the judge that wrote that North Carolina court of appeals case? I don't remember the name of the judge. When was it? The judge is – the case is 15 or 20 years old, as I recall. And what was the name of the case? It's McKillop. I think it's M-C-K-I-L-L-O-P. You've got it cited in your briefs. Versus Onslow. No, I don't believe it is. You've got a lot of briefs here. Well, I didn't realize this issue – I mean, the inference – I'm impressed that you have it at your fingertips. I think Judge Boyle is being treated a little bit unfairly by Walmart because he did not – he could have said there's an inference here. He didn't do that. What he did was he read Ms. Dineen's testimony. And what Ms. Dineen – let's be clear about this. What Ms. Dineen said was that they did an initial survey, and they did a lot of focus groups. They selected a number of – or two or three different trademarks, and then they went to the attorneys. And then they wanted to use Backyard. And then she said, after talking with the attorneys, we decided not to. They went back, and they selected a second group of marks. But they left Backyard in that second group. And after excluding a few other marks, they decided the second time they wanted to use Backyard, so they went back to the attorneys a second time. And after discussing it with the attorneys, decided not to use it. Then the record goes black. We have no idea why Walmart decided, after talking to their attorneys twice and deciding not to use it, that they went ahead and used it anyway. Wouldn't the inference – if the summary judgment rule, that you have to take things in the likely favorable to the non-moot, wouldn't the court have to draw the inference in favor here of Walmart that the attorney advised that you could do whatever you did, that they ultimately did? If that would be the inference, that would favor them, that I always understood the summary judgment rules, that you have to look at the evidence in the like most favorable to the non-mooting party. That's the way we plumbed every other case. As regards Walmart's case – Mr. Stryker, I have a question. Sorry, Judge. Going back to what Judge King just said, we don't know what the attorney said. But a reasonable inference in favor of the non-mooting party could be that the attorney said, you can go ahead and do it, there's no problem. But you're still probably going to get sued, and it might have been a business decision. It could have been a lot of reasons why. And I don't see how you can infer some nefarious advice from the attorney. It just seems like it would have a chilling effect on attorney-client privilege. It seems to me the reasonable inference is they want to protect their attorney-client privilege. It's not like asserting the Fifth. Because in asserting the Fifth in a criminal case, you cannot assert the Fifth Amendment unless there's something wrong that you're trying to not incriminate yourself. But the attorney-client privilege is not like that. What you're saying seems to me like it would just have a chilling effect on attorney-client privilege. Your Honor, actually it cuts the opposite way. Well, if it cuts the opposite way, then... So what happens at trial? So let's say the court says there's an issue of fact, so we're going to send it to a jury. Walmart does the same thing in front of the jury they've done in front of the district court. We're not going to tell you. We're not going to tell you what we did. Are they going to be entitled to an instruction from the trial court judge that you have to infer or you can't infer anything from the fact that in a civil case they're not going to tell you what the advice was in a situation like this? Well, let me just go one... A jury might be able to infer, but the court on summary judgment is what we're looking at. The question is whether the court on summary judgment can draw that in. Your Honor, I think the answer is this. There are two answers, actually. First of all, if you re-judge the Judge Boyle's opinion carefully... You didn't have a bench trial here. I mean, it's almost... It appears that maybe you all consented to a bench trial. We're not going to look at it unless you talk about a bench trial and something else. But it's like a trademark case presented, and you had a bench trial, and the judge decided everything. Well, let's not get... I actually kept asking myself when I asked my law clerk to find me if the law is trademarked different, that judges just take the facts from the presentations and decide them. Well, as I said a few moments ago, the fact that this court has told the district courts that there are seven to nine factors that you have to consider, and you have to consider them, and you can weigh some of these factors in a lesser and in some cases and more in the other. It depends on... There's a certain amount of deference, I think. Discretion is perhaps not the right word, but a certain deference that the Court of Appeals should pay to a district court when they try to analyze these seven to nine factors. Intent is just one factor, and it's really... But we've talked about deference again, and that's a new concept for summary judgment because summary judgment, a summary judgment award, we review it as a no vote, which means we don't give any deference. I mean, if a judge rules on a... We could do criminal cases, suppression motions, things we give lots of deference on back time and things. My point is that the court has told the lower courts that you have to consider these seven to nine factors, and in some cases these factors weigh differently. That obviously requires the district court to determine in each given case, well, why would we weigh one factor less than the other? Juries could do that too. Of course they can. You just instruct them and you... You give them the instructions and then you give them the interrogatories or something. You list these factors and they can answer the interrogatories. But, Your Honor, I think what you're suggesting would probably eliminate summary judgment in trademark cases. In fact... Well, maybe that's right. I don't know. I'm not a trademark expert. But look at the cases that... I'm studying some of it with all these briefings. The cases that really apply in this case are ones that are cited over and over and over again. Pizzeria Uno, Judge Russell's opinion in that case. Lone Star, Pinehurst, Super Duper. The Synergistics opinion, which Your Honor wrote. I suppose some of those... We've been on them. They're cited in those cases, but all of these are summary... I mean, you all could consent. I mean, the parties can go in and agree to let the judge try a case, have a bench trial in these things. And I thought maybe, you know, I thought maybe there were special rules. Maybe you say that maybe there is, that in this particular isolated instance, as to the privilege issue. I don't think that... Based on North Carolina law. I don't know whether you're right or wrong there, but we're going to look at that. I don't concede that the district court applied any inference against Walmart. Okay. He read the transcript of what Ms. Deneen's testimony and came to that conclusion. But there's much other evidence on the issue of willfulness. But he said they were advised not to do it, didn't he? Well, Ms. Deneen said that after talking to the lawyers on two separate occasions, Walmart decided not to do it. Right. Not that they were advised not to do it. I want to go back to you. What other possible answer is that? This doesn't require an inference. When you talk to your lawyer, can we do this? And after talking to your lawyer, you say we didn't do it. There's no inference there. The lawyer could have said, yes, you can do it. But even if you did, you're going to get sued anyway, and there's going to be litigation. It's going to drag out. It's going to get up to the Fourth Circuit Court of Appeals, and it might have just been a business decision not to do it. You don't always take your lawyer's advice. That is willful infringement. If your lawyer says, you're likely to get sued if you use this, and they use it anyway, that's willful infringement. You don't always take – clients do not always take their lawyer's advice. And when they don't in a situation like this, that's willful infringement. Well, a lawyer could have said, well, you can do it. You couldn't get sued, but you'll win. They don't know what the lawyer's advice is. Judge Voidless. Yes, Judge Voidless. I want to go back to your opening, and I'm trying to connect. Your position is that because Walmart said in their motion for summary judgment that there's no material issue of fact, that cuts them off at the stump on contesting the grant of the summary judgment motion to you. It cuts them off from asking this court to grant them summary judgment on the grounds that there were genuine issues of material fact. For that reason, and also if you read their briefs, they nowhere appeal from the judge's denial of their motion for summary judgment. That issue is not before this court. The most that this court can do is to send it back for a trial with a jury. But the court should not do that. So you're saying we can't just decide in their favor, as they argue. They didn't appeal. We might well agree with you on that. Well, and here's the other thing. I asked earlier if he was trying to get this to send it back for a trial, and that's when he got into the back row. We'd rather win. Well, sure, he'd rather win. Well, I got a minute and a half, and there's one point. We'd rather win, and you'd rather win, too. Well, that goes without saying. But it produces an inefficient dispute to the fact that the judge shouldn't have granted summary judgment. We might just remand it for a trial or remand it for whatever proceedings are appropriate. Here's another fundamental problem. Judge Void still has it. Right. Here's the fundamental problem with Walmart's case. They take the position that the judge granted summary judgment of willfulness. They say that. The judge didn't grant summary judgment of willfulness, any more so than he did any of the other seven or eight factors that he considered. What he did was he considered all of those factors and came to the conclusion that our trademark was infringed. But what does that lead you to? They've asked this court to decide the willfulness issue on the wrong standard. They're saying that since the court ruled granted summary judgment on the issue of willfulness, that you have to consider that sort of as a question of law. But that's a discretionary termination, whether it's in summary judgment or in one of the synergistic factors. The court by statute determines willfulness based on an abuse of discretion standard, and that's not what they appeal from. They're telling the court that you have to reverse on this issue because the district court granted summary judgment of willfulness, and the court did no such thing. I've got four seconds left. But you've got some time saved, too. I do. I do. And you'll be hearing from me again. Thank you very much. Thank you very much. Mr. Zella? Before I address the matters that occurred later in the case, the causation arguments related to the remedies trial and disgorgement, I'd like to just address some of the questions of the court on the likelihood of confusion and intent issues that were just discussed. We could take a step back here. Trademark cases are no different than any other case when it comes to summary judgment. The law on your review, being de novo, and the law on what the district court was obligated to do is the same as in every other case. There's no doubt about that. If you want to know that's the case, look at CareFirst, George, and Grayson. All three are summary judgment cases, and they recite the fact that adverse inferences cannot be taken against the non-movement. All inferences have to be taken in favor of the non-movement. The court reviews this decision de novo. Well, is that true of cross motions for summary judgment? Certainly. I think perhaps two of the three of the cases I just listed are cross motion cases. Isn't he right that we can't grant judgment to you? No, he's wrong. He's wrong with me. He said we could grant summary judgment. Of course. This is a de novo review. There are cross motions for summary judgment. It was included in our docketing statement. Normally we review decisions. Correct. We're a court of appeal. Did you appeal the denial of your motion for summary judgment? Yes. Where? It's included in our docketing statement, and below the briefing, the cross briefing, included a request in our opposition to Variety's motion. In that brief, we also request entry of summary judgment in favor of Walmart because of the factors that I articulated earlier, namely that under Grayson, right, we have. Right. Okay. Enough on that. I'm sorry. Go ahead. He also says that there is something different, at least with respect to one North Carolina court of appeals case, there is some different standard to take inferences with regard to attorney-client privilege or withholding information. Are you familiar with that? I'm not. That's news to me. I don't believe it's in any of the briefs. He hadn't cited that case. Correct. I didn't think he would necessarily be. I just wondered if he might. That is news to me. It seems wrong because on summary judgment, you can't take an adverse inference against the non-movement. And as the court articulated in its questions. Would that be a privilege issue or an evidentiary issue for a court? On summary judgment. I mean, that might impact on whether we apply federal law or state law. I think it's an issue of substantive law. I don't think it's an issue of privilege law. Because what's important here is Walmart was not asserting advice of counsel as a defense. That's not what we're talking about here. What we're talking about here is a fact witness offering testimony about a sequence of events in the decision-making. That's it. And in the course of that deposition testimony, she offered nothing about the advice. So Walmart isn't relying on the advice as a defense. Getting advice. She did. A fact. She said we spoke to counsel. That they sought and received some advice. Exactly. And then they did some things or didn't do some things. Exactly. But no further. Right? I understand. But that was referred to in the testimony. And he says under this North Carolina case, North Carolina Court of Appeals, I don't know whether that's controlling all of North Carolina or not, but that issue, too, because it's not Supreme Court, what impact that has in the context of this case. We don't know. You all haven't even briefed it. Exactly, Your Honor. We haven't briefed it. But it's here this morning. All right. Go ahead. Because in the intent analysis, the court looked at the testimony, and from the testimony, putting aside what the advice was or was not, from the testimony, concluded that Walmart was twice advised to not proceed with a backyard mark. And then he used that to enhance the damages. Of course. Isn't that right, sir? Yes. There's a multiplier effect. The earlier decision was. . . That's what you were arguing about. The money that you were awarded against you arose in part, at least, from that. That's exactly right, Your Honor. Okay. I'll leave the summary judgment and get to the causation arguments. So at the disgorgement trial, it was the court sitting in equity. Walmart made two principal arguments. One, plaintiff had the burden to prove an entitlement to disgorgement of profits under the synergistic case. Walmart didn't do that. It didn't offer any evidence on those specific factors. It merely rested on the summary judgment record. The summary judgment record does not concern the synergistic factors. There are six synergistic factors. Five of them are not found in the likelihood of confusion factors. For example, one of the factors is, is this a case of palming off? Palming off is a term of art and trademark. It's akin to counterfeiting. Am I in the marketplace telling consumers, my product is yours? There's no evidence of that whatsoever. Yet, the plaintiff rested and won that factor in the synergistic analysis in front of Judge Boyle. That's clearly an abuse of discretion. The plaintiff did nothing to try and carry the synergistic factor burden other than cite to the summary judgment brief. The second. Where do you get abuse of discretion? Where does that come in here? He didn't. The plaintiff didn't do anything to carry its burden. That's necessarily. No, but you said abuse of discretion. I thought we were doing this thing for DeNovo. Summary judgment is DeNovo. I didn't know there was any deference involved in anything in this case. Let me clear that up. That is a very important distinction, Your Honor. All right. The summary judgment decision, the denial of Walmart's motion and the grant of Variety's motion is DeNovo. No deference. Okay. The later trial. I'm with you. Was an equitable determination under synergistic. So-called trial. So-called trial. A hearing on damages. It was a hearing with witnesses, Your Honor, yes. Damages inquiry. So we used to call them. I never called them trial. The same thing, Your Honor. You all called it trial and talked about a bench trial and all that kind of stuff. That was confusing terminology to me. Anyway. Anyway. Summary judgment and a damages inquiry and then an attorney of the award. Exactly. DeNovo on summary judgment, abuse of discretion on disgorgement. So on disgorgement, the second issue on disgorgement presented by Walmart on appeal is the fact that Walmart submitted unrebutted evidence demonstrating affirmatively the absence of any causal link between its sales and the profits that it earned and its use of the accused mark. Backyard grill. Without any causal link, there can't be a disgorgement of Walmart's profits. Now, the cases plaintiffs cite all concern instances where a defendant was unable or chose not to demonstrate the absence of a causal link. But the law is clear under Supreme Court precedent, the Kalman Treatise, the McCarthy Treatise, federal circuit, I'm sorry, federal model jury instructions. The question of whether the profits are attributable to the use of the mark is a critical question. And the evidence that Walmart submitted was voluminous and unrebutted. Chief among that evidence is the fact that during the case, Walmart took the name off of the products, 300 products in 4,000 stores, and sales did not decrease. They stayed the same or increased. What world can there be when the sales are due to the use of the word backyard and you take it off and sales are unaffected? It's impossible. It's the best real world evidence you could possibly have. The second piece of evidence that is critically important on that and that demonstrates a clear error is the fact that Judge Boyle in his decision on disgorgement stated that he had previously rejected Walmart's experts' survey on this damages issue. That's the survey performed by Dr. Van Leer. That survey, which only concerned this disgorgement issue, was never previously presented. Judge Boyle made a basic error of fact in his understanding of the record. There were two consumer confusion surveys presented on summary judgment. Those were the surveys performed by Mr. Perrette and Mr. Mantis. He had previously considered those, but he had never. Why didn't Mantis do it? Well, he never considered them. There was a survey that he said in his order he had previously rejected so he's not considering it. That's not true. It's simply wrong. So we had real world evidence showing the absence of causation and we had an expert survey that showed the absence of causation. And there's a whole litany of other evidence that was unrebutted that shows the same. And it's listed at great length in Walmart's findings of fact and proposed conclusions of law submitted after the trial. It's about 40 pages of information. And none of it was rebutted. My time is up. Yes, sir. Thank you. Thank you, sir. Mr. Adams. Your Honor, this part of the argument concerns the remedies phase. After the court granted summary judgment in Variety's favor, there was a disgorgement trial that lasted two days. During that testimony, we heard from Walmart. And there's a good reason for that. Under the federal trademark statute, the only burden that Variety had was to put in Walmart's gross revenue. The evidence regarding the synergistic factors, the burden was not on Variety. It was all on Walmart. But as I said earlier, and it's clear from the record, that most of the evidence that Walmart has put to this court in support of its claim that the summary judgment decision was wrong is evidence that was generated at the profits disgorgement trial. And it's not in the summary judgment record. It's simply not there. But before I forget it, I want to say something about the Van Leer survey. Mr. Puzelis says that the court made a factual error in saying that he had disregarded a report that he had not seen before. That is incorrect, and here's why. The Van Leer survey, original Van Leer survey, was rejected because of the way in which the survey was conducted. But it related to all 50 states. And part of Walmart's strategy in the disgorgement part of the case was to argue that they were only entitled to recover profits for the 16 states where we competed. So they had Mr. Van Leer go back and do the exact same survey, but restricted to the 16 states. So the survey mechanism and the survey strategy that Van Leer used in the first survey was the same as in the second. All Judge Boyle was saying was that for the same reasons that I rejected Van Leer, I'm rejecting it again, even though it relates only to 16 states. So that's what happened. Now, as far as attributable is concerned, you need to take a look and compare the statute in the copyright case, in the Copyright Act, because it says specifically that the infringer has the obligation to prove the deduction of all factors attributable to the profits other than the infringing act. That language appears nowhere in the Lanham Act, and there's a good reason. Whereas in a copyright case, you might very well have a case involving both music and lyrics, whereas it's only the lyrics that are in contest. The infringer is going to have to prove that, well, it was the lyrics that resulted in the damages or whatever. That doesn't really come into play in a trademark case. A trademark identifies the product or service, and you can't slice it and dice it like you can in a copyright case where it may be one photograph out of 100 in a magazine or any number of other circumstances. But I want to go briefly to the disgorgement because the- You're appealing that. You're claiming what? The claim is that in two respects, the judge abused his discretion. One was limiting the recovery to only the 16 states where Walmart and Variety competed. And secondly, there was an issue of basically what's called a fixed cost, SG&A, Sales General Administrative Costs. After reciting- The ward favored Walmart. Yes. You should add more. He allowed a vast deduction of fixed cost. He said in the disgorgement order that, especially in the case of willful infringement, there has to be a clearly drawn nexus between the fixed costs and the infringed- and the products. The only testimony in the disgorgement trial was Walmart's witness who testified that there was no such nexus. Instead of determining the data regarding the grills and other accessories that bore the trademark, he simply got Walmart to give him the data for the entire lawn and garden area, which included everything from bales of pine straw to rotting lawnmowers and everything in between. So the case law that the judge cited in the disgorgement order is contradicted by the judge's actions in the very next paragraph. That was the point. The other issue, of course- So you want us to send it back and have a new trial on disgorgement or apply the- Apply the, what did you say, the correct rule? And send it back along with the instruction very much like in the Bassett case and many other cases. How much more would you be entitled to if we did that? It would be well over $100 million. What about the attorney's fees? Are you complaining about those too on appeal? No, that's Walmart's appeal. They've appealed from Walmart. So you're satisfied with that point? Right. The other issue that we did appeal from was the denial of a jury trial on our royalty claim. Is that moot? No, it's not moot. Without regard to what happens insofar as the profits are concerned, the Lanham Act is very clear that you get profits and damages. The judge drew the inference that because he had already disgorged profits, that any royalty was necessarily included in that award. It clearly is not, and here's why. And there are cases all through the brief on this. But the Aqua Shield case, for example, Federal Circuit case. Take a simple example. Gross sales of $100. Gross profits of $50. A jury concludes or might conclude that the infringer might have, might should have paid a royalty of, say, 5%. In the cases, there are cases all through our brief on that point. If the evidence was that Walmart could pass along that royalty, like it did all of its other revenue, all of its other costs, and left a huge profit besides, the sales price then goes up to another $5, $105 to take into account the royalty. But the profits remain the same. So there's no double recovery. That was the issue here. Walmart and Variety both told the judge that we were entitled to a jury trial on the damages phase, and I think that's one reason why the judge bifurcated the trial and handled the profits side of the case first. But then Walmart changed its tune when it came time for the jury trial on damages. It argued basically that we had elected a remedy of profits instead of damages, and that's simply not reflected in the record, not at all. And so that is very clean. No matter what the Lanham Act says, you're entitled to a jury trial on a legal issue, and the courts all say that the damages in a case like this, you're asking for a reasonable royalty. That's a legal issue, and it should go to a jury. Just tell me in plain English and don't cite me a case, why should Judge Boyle have gone outside the 16 state area to consider the damages in this case? Principally because in cases of willful infringement, the cases one after the other say that in a case of willful infringement, you don't get to keep any of your profits. The Bassett case, there are a couple dozen cases out there, and half of them are cited in our brief. They all say the same thing, and that is that in a situation where there's willful infringement, particularly where there's willful infringement, it's a deterrence issue. You don't deter infringement if you allow the infringer to keep part of the profits. The only way to deter infringements is to make sure that it's not profitable. They're saying that willful infringement is affected by that attorney-client privilege issue. They're saying they're entitled. They're saying as a non-movement, which I don't think they were, they were a movement in their own motion, that they're entitled to an inference. Well, on our side of the summary judgment motion, we were entitled to an inference as well. Why weren't we entitled to exactly the opposite inference? That attorney-client. Yes. That privilege issue pops back up. But again, you can't read. Over here on the damages. But you can't read Judge Boyle's opinion and come to the conclusion that he applied any inference either way. Well, he said they acted willfully. He read. And he said they acted willfully because they were advised not to do it, and they didn't. But that was not the only reason. There's much other. No, but it's affected by it. That's what they're saying. There's much other evidence in the record regarding Walmart's willfulness. What you're saying we need to do is uphold the summary judgment on liabilities and send it back to Fort Worth on the discourse. That's right, and on the jury trial for profits, Your Honor. Yes. Okay. Any more questions? Thank you very much, Mr. Adams. We'll come down and brief counsel and then take a short break before we go to the first case.
judges: Robert B. King, Henry F. Floyd, Stephanie D. Thacker